SIDNEY WALTER *et al.* v. THE MISSOURI PACIFIC
RAILWAY COMPANY.

No. 14,021.    (79 Pac. 1089.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury to Live Stock—Joint Agent of Companies.* A contract for the carriage of live stock was made by shippers with an agent in the employ of two railway companies. The contract was composed of a letter and telegrams, in which there was no disclosure for which company the agent was acting. In an action against one of the railway companies for negligently transporting the stock the shippers, who were plaintiffs, used the testimony of the agent in support of their action. He testified that when the contract was made he was not acting for the defendant railway but for another company. There was no contradictory evidence on the question. *Held,* that a demurrer to plaintiff's evidence was rightly sustained.

2. —————— *Cause of Action Not Stated.* In an action against a carrier for injury to live stock transported by it the petition was divided into two counts, called "causes of action." The second set out a formal contract of carriage, in writing, with averments tending to show that the contract was not signed voluntarily by the shippers and that they did not read it, conveying the impression that plaintiffs were seeking to avoid its obligations. *Held,* that such averments did not constitute a cause of action against the carrier.

Error from Marshall district court; SAM KIMBLE, judge. Opinion filed March 11, 1905. Affirmed.

STATEMENT.

THE original petition in the court below was divided into two counts, called by plaintiffs "causes of action." The first, stated briefly and in substance, is: Plaintiffs wrote to one Nova Douthitt, general live-stock agent of the Missouri Pacific Railway Company, requesting him to quote rates on a shipment of live stock

from Deane Spur, Ark., to Irving, Kan.  In response they received the following letter:

"THE MISSOURI PACIFIC RAILWAY COMPANY,
ST. LOUIS IRON MOUNTAIN AND SOUTHERN RAILWAY COMPANY,
AND LEASED, OPERATED AND INDEPENDENT LINES.

N. DOUTHITT, *Live-stock Agent.*
G. P. ROBINSON, ⎫ *Asst. Live-stock*    OFFICE OF LIVE-STOCK AGENT,
E. H. CALEF,    ⎬       *Agents.*              KANSAS CITY STOCK-YARDS, MO.,
J. A. STERLING, ⎭                                November 20, 1897.

RATES ON LIVE STOCK.

"*Messrs. Walter & Chaffee, Marysville, Kan.:*

"GENTLEMEN:  As per your request of November 9th to Mr. H. G. Krake, beg to quote you, on stock cattle to Irving, Kan., from Pine Bluff, $70.25; from Deane Spur, Ark., $72.75, per standard 30-foot car. Rate on horses, Irving, Kan., to Pine Bluff, $83; to Deane Spur, $98, per standard 30-foot car.  No through rate to Marysville, that being on a foreign line.

"Regarding transportation, you understand passage is granted in charge of stock.  Would be glad to have you call on us when you pass through Kansas City.

Very respectfully,
"J. J. W.               N. DOUTHITT, *W. L. S. A.*"

It is then alleged that pursuant to said letter and a verbal agreement thereafter made to pay the tariff rate the plaintiffs went to Monticello, Ark., a station near Deane Spur, and telegraphed to Douthitt as follows:

"MONTICELLO, ARK., November 28, 1897.

"*N. Douthitt, Stock Agent, Union Stock-yards, K. C.:*  Fifteen loads stock, Monticello and Deane Spur.  Want cars at once.  Make special.

Yours,       WALTER & CHAFFEE."

On the next day plaintiffs received the following telegram:

"*Walter & Chaffee, Monticello, Ark.:*  Will do everything we can to furnish cars for you.

N. DOUTHITT."

It is alleged that the railway company furnished plaintiffs eight cars to be used in the transportation of stock from Deane Spur to Irving, and that they

loaded therein 365 head of cattle; that through the negligence of the railway company many of them were injured, and others died.

The material part of the second count reads:

"For a second cause of action the plaintiffs state that they adopt all and singular the allegations of negligence contained in the petition hereinbefore set forth, and allege and aver that after the said train containing said stock had arrived at Dumont, Ark., a distance of several miles, there was presented to the plaintiffs a contract for the carriage of said cattle, the cattle at the time being upon the train, and having been already received by the defendant and started for their destination at Irving, Kan. That plaintiffs had no alternative but to sign said contract upon being told by the agent of the defendant that it should be so signed, the train stopping but a few minutes at Dumont, and the plaintiffs not having sufficient time to examine the contract.

"That the original of said contract is not in the possession of the plaintiffs, but is in the possession of the defendant, and that a copy of said contract, as furnished by the defendant, is hereto attached and filed herewith and made a part hereof, and marked 'Exhibit A.' "

"Exhibit A," attached as a part of this second count, is a copy of a shipping contract entered into between plaintiffs and the Missouri Pacific Railway Company for the carriage of the eight cars of stock from Monticello, Ark., to Irving, Kan. The petition concluded with a prayer for the recovery of $1275 damages by reason of the negligence of the railway company in transporting the cattle.

On motion of defendant the plaintiffs were required to elect on which cause of action set out in the petition they would rely for a recovery. They elected to stand on the first cause of action, and filed an amended petition omitting all reference to the written contract of shipment as contained in "Exhibit A" to the original petition. The railway company answered denying under oath the authority of Douthitt to act as agent for

it respecting the matters alleged in the amended petition, and setting up, with other defenses, that plaintiffs entered into a written contract of shipment with the St. Louis, Iron Mountain & Southern Railway Company, executed at Monticello, Ark., for transportation of the stock to Irving, Kan., in all respects the same as "Exhibit A" attached to the original petition, except that the carrier was designated as the St. Louis, Iron Mountain & Southern Railway Company. To this answer plaintiffs replied, first, by a general denial, and further, denying the execution of the written contract of shipment with the St. Louis, Iron Mountain & Southern Railway Company. On the trial the evidence tended to show that the loss and injury to the stock occurred on the line of the St. Louis, Iron Mountain & Southern Railway Company, principally at Little Rock.

The court below sustained a demurrer to the evidence. Plaintiffs complain.

*W. W. Redmond,* for plaintiffs in error.

*Waggener, Doster & Orr, E. A. Berry,* and *W. J. Gregg,* for defendant in error.

The opinion of the court was delivered by

WILLIAM R. SMITH, J.: The court did not err in requiring plaintiffs to elect on which of the two counts or causes of action they would rely for a recovery. There was no averment in the second count that the formal contract of carriage made at Monticello, Ark., with the Missouri Pacific Railway Company was mutually binding on the parties to it. Plaintiffs alleged that they signed the contract but that they did so without reading it, and that no alternative was given them except to sign it after the cattle had started to their destination, and that the agent told them it was necessary that it be signed by them. The brief reference

to this contract indicates that plaintiffs were seeking to avoid the binding force of its provisions on them, with no intention of relying on it as an obligation for the violation of which by the railway company they sought a recovery of damages. The ruling requiring an election as to which count of the petition the plaintiffs would stand upon had the legal effect, after the election was made to proceed under the first cause of action, of striking from the petition the second count. We are unable to see how this count, if it had been allowed to stand, could have aided the plaintiffs.

There is nothing in the letter, telegrams and verbal agreement between plaintiffs and Douthitt, which are set out in the first cause of action and relied on as a contract with the railway company for the carriage of the cattle, to show that Douthitt was the agent of the Missouri Pacific Railway Company. Plaintiffs, however, made this clear by the testimony of Douthitt himself, which they introduced in their own behalf. He testified:

"Ques. If the rate had been quoted by you or the information furnished by your office, as mentioned in 'Exhibit A,' for what company would you then be acting, assuming that the shipment originated on the line of the St. Louis, Iron Mountain & Southern Railway? Ans. In any business originating on the Iron Mountain I would be acting for the Iron Mountain.

"Q. You would be so acting at that time? A. Yes, sir."

"Exhibit A" referred to in the question was the letter of Douthitt, dated November 20, 1897, set out in the statement. It was thus shown by the testimony of the person with whom they contracted that he was not the agent of the railway company against which the action was prosecuted, but of another carrier on whose line of road the business originated, namely, the St. Louis, Iron Mountain & Southern Railway Company. By bringing forth this testimony plaintiffs re-

moved all doubt respecting the identity of the company for which Douthitt was acting at the time the contract was made.

The judgment of the court below is affirmed.

All the Justices concurring.